## MARY HARRIS v. THE STATE.

*No. 3898.   Decided December 19.*

**Infanticide — Corpus Delicti.** — See evidence stated in the opinion which, on a trial for infanticide, is held wholly insufficient to establish the *corpus delicti.*

APPEAL from the District Court of Walker. Tried below before Hon. N. G. Kittrell.

This is a second conviction of this appellant for infanticide. On her former conviction, which was reversed on appeal, she was found guilty of murder in the first degree and her punishment assessed at a life-term in the penitentiary. Harris v. The State, 28 Texas Court of Appeals, 308.

The appeal here prosecuted is from a judgment of conviction for manslaughter, the punishment being assessed at two years in the penitentiary.

The facts are sufficiently stated in the opinion.

*Benton Randolph,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

HURT, JUDGE.—This is the second appeal in this case. Harris v. The State, 28 Texas Court of Appeals, 308.

The conviction now appealed from is for manslaughter, and the only question presented by counsel is to the sufficiency of the evidence.

Ann Johnson testified, that the defendant told her she had had a child on Sunday night about dark, and had put it in Dr. Baldwin's spring; that the child was born alive. She did not say whether it was alive when she put it in the spring. When asked if it was alive when she put it in the spring she made no answer.

T. A. Jones testified, that defendant told him that the child was alive when she put it in the spring. This witness also heard defendant tell one Mr. Brown that the child was alive when she put it in the spring. No witness saw the child in the spring. A witness says when he got there he saw the child on or at the edge of the spring. Its body was wet.

A physician examined the body at the spring. The head was bruised on top, but the skull was not fractured. A child's head at that age is very flexible. He applied the hydrostatic test to see whether the child had ever breathed. He found air in the lungs, which is the usually accepted test that the deceased had breathed. In his opinion the child had breathed, and was born alive, though he could not say positively. He did not examine the child with a view of determining whether it had been drowned. He could not say it had been drowned. He found no water in the lungs. The body was sodden and green, and had the appearance of having been in the water for several days. This was Wednesday after the Sunday when the child was born. The defendant told this witness that the child was born while she was in a kneeling position, and that its head struck the floor and produced the bruise. The bruise could have been inflicted in this way. The bruise might have produced the child's death. The State relied upon showing death by drowning.

On a former appeal it was held that the testimony of the physician was sufficient to corroborate the confession of the defendant that the child was born alive, but that there was no corroboration as to the fact of drowning. Presiding Judge White, in the opinion delivered, propounded the following pertinent questions: "What evidence of drowning is there outside the confession? Was the child found in Dr. Baldwin's spring? If so, who found it there? Under what circumstances? Who found it in and took it out of the spring? Why did not he (the physician) make an examination, and give his opinion as to the facts of drowning?"

These questions remain unanswered, so far as the record before us shows. To these unanswered questions we desire to add this: The witness who testified to having seen the child at the edge of the spring on Wednesday also testified that on that morning early Dr. Baldwin went down to the spring. "He came back to the house and got me, and he and I went to the spring together." Then follows the statement as to how he saw the child.

Did Dr. Baldwin first find the child? Under what circumstances, and in what position and condition, did he find it? He did not testify in the case, and the absence of his testimony is in no manner explained. Is he dead, or beyond the jurisdiction?

Under the well settled rule announced in our former opinion, the admission of the defendant is not corroborated as to the *corpus delicti,* and we can not permit this judgment to stand.

*Reversed and remanded.*

Davidson, J., being disqualified, did not sit in this case.