## ROBERT HORN v. THE STATE.

### No. 1904.   Decided November 6, 1912.

**1.—Forgery—Voucher—Receipt—Indictment—Evidence.**

Where, upon trial of forgery, the instrument as set out in the indictment was a railroad voucher to the defendant with a blank receipt attached thereto for the defendant to sign, and the indictment alleged that the figures of this voucher providing for the payment of $5.20 had been fraudulently raised to $15.20 by the defendant, it was not necessary to allege that the defendant had signed this receipt, as the instrument was the subject of forgery without such signature, under article 925, Penal Code; nor was it necessary to prove that defendant had signed said receipt, and such instrument as altered was admissible in evidence.

**2.—Same—Evidence—Payment—Circumstantial Evidence.**

Upon trial of forging a voucher on a certain railway company by raising the figures thereof, there was no error in permitting the cashier of the bank to testify that the voucher as altered had been paid by the bank; the evidence being circumstantial.

**3.—Same—Evidence—Other Transactions.**

Upon trial of forgery of a certain railway voucher, testimony was admissible that the bank had paid a number of such vouchers to defendant in person although it could not positively be shown that defendant presented this identical voucher.

**4.—Same—Rule Stated—Circumstantial Evidence.**

In a case depending entirely upon circumstantial evidence, greater latitude is allowed in the presentation of evidence than when direct and positive testimony is relied on.   Following Noftsinger v. State, 7 Texas Crim. App., 301.

**5.—Same—Evidence—Other Offenses—Contemporaneous Transaction.**

Upon trial of forgery of a certain railway voucher, it was error to introduce testimony that defendant had presented other forged vouchers for payment, not shown to have been contemporaneous with the transaction for which defendant was being prosecuted.

**6.—Same—Evidence—Comparison of Handwriting.**

Upon trial of forgery of a railway voucher by defendant, it was reversible error to admit in evidence defendant's bail bond, for the purpose of showing that the name of defendant as signed thereto was the same by comparison as the signature of the alleged voucher, without first proving that defendant had signed said bond.   Following Phillips v. State, 6 Texas Crim. App., 364.

Appeal from the District Court of Nacogdoches.   Tried below before the Hon. James I. Perkins.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Thomason & Wade,* for appellant.—On question of insufficiency of the indictment: Cagle v. State, 39 Texas Crim. Rep., 109; Black v. State, 42 id., 585; Daud v. State, 34 id., 460, and cases cited in opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was indicted, charged with forgery. The indictment omitting formal parts, is as follows:

". . . with intent to injure and defraud, wilfully and fraudulently alter an instrument in writing then and there already in existence, and which had theretofore been made by W. P. Smith, cashier, and H. W. Whited, general manager, respectively of the Nacogdoches & Southwestern Railroad Company, a corporation, with the said W. P. Smith its cashier and the said H. W. Whited its general manager, the said W. P. Smith and H. W. Whited, as such officers aforesaid then and there having authority to make said instrument, and which said instrument at the time it was so made and before it was altered as aforesaid by the said Bob Horn, was to the tenor as follows:

Voucher No. 203.

Nacogdoches & Southeastern R. R. Co.,
        Nacogdoches, Texas.

November 15, 1910.

Favor of Robt. Horn

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

If the account as shown below is not correct, return without alteration and state differences.

| Date | Amount | Amount |
|---|---|---|
| For balance due on Oct. 10 | | |
| Pay roll | 5.20 | |
| Total | | |

Audited:                        Approved:
    W. P. Smith,                        H. W. Whited,
        Cashier.                            General Manager.

If the above account is not correct, return without alteration and state differences.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Reverse Side of Said Instrument.

Voucher Check.
Nacogdoches & Southeastern R. R. Co.                    No. 203.

Upon the payee executing in
ink the receipt on left end of     Nacogdoches, Texas, Nov. 15, 1910.
the voucher check and en-
dorsement on back
   Pay to the order of Robt. Horn..........................$5.20
Five and 20/100 ..................................... Dollars.
   When properly receipted    Nacogdoches & Southeastern R. R. Co.,
this voucher check is pay-         W. P. Smith, Cashier.
able at Commercial Guar-
anty State Bank, Nacog-
doches, Texas.
Endorsements on left end of said voucher check.

Receipt must be signed by the person, firm or proper official of
corporation in whose favor voucher check is drawn otherwise *authority*
must accompany receipt.
      .............................................
   Received the amount stated in this voucher check in full payment of
the within amount.
      ..................................... Payee.
Payees and banks are requested to make endorsements here.

In the above instrument the words and letters, to wit: Nacogdoches
& Southeastern R. R. Co. mean the Nacogdoches & Southeastern Rail-
road Company, the corporation above mentioned. And the words and
figures, to wit: "For balance due on Oct. 10, pay roll, 5.20," mean
for balance due on October, 1910, pay roll of the said Nacogdoches &
Southeastern Railroad Company, $5.20, the said figures 520 under the
word amount meaning $5.20, the whole expression meaning that the
said Nacogdoches & Southeastern Railroad Company was due the sum
of $5.20 to the said Robt. Horn on the pay roll for October, 1910.
   And the said Bob Horn did then and there alter the said in-
strument in the manner following: on the one side after the words "pay
roll" and before the figures 520 (meaning $5.20) by adding and in-
serting the figure 1 before the figure 5; and on the other side, headed
voucher check, after the words, "pay to the order of Robt. Horn" and
the dollar mark ($) and before the figures 520, by inserting the figure
1 between the said dollar mark and the said figures 5.20, and changing
the word "five" before the word and figures 20/100 dollars, to the
word "fifteen." Then follows the instrument again, altered as alleged.
   Appellant admits this instrument is the subject of forgery, but the
indictment to be sufficient must allege that the payee had signed the

receipt, and cites us to the case of Joiner v. State, 46 Texas Crim. Rep., 408. It will be seen that this indictment contains the innuendo averments alleged to be essential in that case. The other authorities cited by appellant have no application, they only holding that when an instrument on its face does not import a legal obligation explanatory averments must be used to show it a subject of forgery. As shown above, explanatory averments were used to explain all that it was necessary to explain in the language, and as thus explained, the instrument evidenced that the railroad company was indebted to appellant in the sum of five dollars and twenty cents, and a promise to pay it upon the execution of the receipt attached to the instrument. Was it necessary to allege or prove that Robert Horn had signed the receipt to evidence a legal claim against the railroad company for the amount? If so, the indictment would be fatally defective, and the motion sustained. It will be seen there remained nothing for the railroad company to do to render it a binding obligation, consequently the case of Robinson v. State, 35 Texas Crim. Rep., 54, is not in point. If Horn had never signed the receipt, and died, could his heirs have collected the amount due on this order, and would it be admissible in evidence to prove that the railroad company was indebted in said sum? If Horn had not presented it to the bank, but instead had delivered it to his grocer merchant in payment of a debt due without signing it, would it be a transfer of the claim, and could it be collected by the assignee? If it had been a genuine instrument there is no doubt the assignee could collect it. Article 925 provides he is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall alter an instrument in writing, then already in existence, by whomsoever made, in such manner that the alteration would (if it had been legally made) have created, increased, diminished, discharged or defeated any pecuniary obligation. If this instrument had been legally made (as altered) it would have increased the pecuniary obligation of the railroad company, and whether appellant signed the receipt or did not do so, would not affect the pecuniary obligation of the company. Mr. Wharton in his work on Criminal Law, section 739, et seq., lays down the rule "that it is only necessary in order to make the instrument a subject of forgery that it should be capable of being used as proof in legal action," and this instrument as altered, if true, would be evidence of a debt of $15 without any explanatory averments. For other authorities see Wheeler v. State, 62 Texas Crim. Rep., 370, 137 S. W. Rep., 125, and cases there cited.

The instrument as originally made by the company had a receipt attached thereto for appellant to sign, but it was not then signed, consequently in alleging the instrument it was not necessary to allege that he had signed it. And this fact that he, if he did do so after it was altered, signed it, would not render the instrument inadmissible in evidence, because he had subsequently signed the receipt. The signa-

ture to the receipt not being essential to constitute the crime of forgery, it was unnecessary to allege that he had signed it.

There was no error in permitting the cashier of the bank to testify that the voucher, as altered, had been paid by it and the amount paid. This was a case of circumstantial evidence, and each circumstance connected with the entire transaction was admissible, as was the fact that the bank had paid a number of such vouchers to appellant in person, although not able to state positively that appellant presented this identical check. In a case depending entirely on circumstantial evidence, greater latitude is allowed in the presentation of evidence than when direct and positive testimony is relied on. (Noftsinger v. State, 7 Texas Crim. App., 301.) But the court was in error in permitting it to be elicited that defendant had presented other forged checks for payment, not shown to have been contemporaneous with the transaction here alleged.

The court erred in permitting the bail bond to be introduced, to use the name of appellant as signed thereto as the standard of comparison, without any proof that appellant had signed the bond. (Phillips v. State, 6 Texas Crim. App., 364.) And in this case this was a material error. Appellant introduced no testimony but relied on his plea of not guilty, this requiring the State to prove its case by competent testimony. The State was not able to prove this voucher ever came into the hands of appellant, except by circumstances; it was desired to prove that the alterations and signature to the receipt were in his handwriting, and the bond was introduced as a standard of comparison. It would have been admissible for that purpose if it had been proven that he signed it in person, but in the absence of such proof, the court could not presume that he did sign it in person, simply because it was a bond in a case in which he was the defendant, and this bond being introduced over the objection of appellant, and used as a standard of comparison with the writing on the voucher, will necessitate a reversal of the case.

The other matters complained of present no error.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*